UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARYANNE BOYD,

    Plaintiff,

v.                                                             Case No. 8:20-cv-828-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability DIB (Tr. 15). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 69-76, 77-91). Plaintiff then requested an administrative hearing (Tr. 107-08). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 33-66). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-32). Subsequently, Plaintiff requested review

from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1958, claimed disability beginning on August 6, 2016 (Tr. 177). Plaintiff obtained a high school education (Tr. 38). Plaintiff's past relevant work experience included work as a vocational training instruction, a cosmetologist, a school secretary, and an administrative assistant (Tr. 26). Plaintiff alleged disability due to thyroid issues, femoroacetabular impingement, chronic venous insufficiency, bulging discs, lordosis of the spine, osteopenia, migraines, and allergies (Tr. 161, 184).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 and had not engaged in substantial gainful activity since August 6, 2016, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; cervical spondylosis; migraines; right shoulder degenerative joint disease status post rotator cuff repair; and Hashimoto's/hypothyroidism (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the follow:

> "[S]edentary work as defined in 20 CFR 404.1567(a) except she must be allowed to alternate briefly between sitting and standing every 30-60 minutes while still attaining the sitting and standing required of the sedentary exertional limit. The claimant is further limited to occasional pushing/pulling with the right upper extremity and frequent foot control operation with the bilateral lower extremities. She is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching. She must never crawl or climb ladders, ropes, or scaffolds. She must never perform repetitive rotation, flexion, or extension of the neck. The claimant is limited to occasional overhead reaching with the right upper extremity and frequent reaching in all other directions with right upper extremity. She must avoid concentrated exposure to extreme temperatures, excessive noise, excessive vibration, and pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She must avoid all exposure to hazardous machinery and unprotected heights."

(Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 22).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff is capable of performing her past relevant work as an administrative assistant and a school secretary (Tr. 25). The ALJ determined that such work does not require the performance of work-

related activities that are otherwise precluded by Plaintiff's RFC.  *See* 20 C.F.R. § 404.1565.  Accordingly, the ALJ found Plaintiff not disabled (Tr. 26-27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The SSA, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and

whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has

5

conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred in determining that Plaintiff's adjustment disorder was not a severe impairment, by not accounting for Plaintiff's migraine headaches in the RFC assessment, and by giving no weight to Plaintiff's orthopedic surgeon, David Thompson, MD's ("Dr. Thompson") opinion. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A.   Whether the record supports the ALJ's finding that Plaintiff's adjustment disorder was not a severe impairment.**

Plaintiff contends that the record does not support the ALJ's finding that Plaintiff's adjustment disorder was not a severe impairment. Notwithstanding the fact that the ALJ found multiple severe impairments at step two and that the finding of *any* severe impairment at step two is sufficient to satisfy the threshold inquiry, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff's adjustment disorder is a non-severe impairment. Step two of the sequential evaluation process operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850,

853 (11th Cir. 2013) (*per curiam*). At step two, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. §§ 404.1521, 416.921.

Here, in evaluating Plaintiff's mental condition, the ALJ used the psychiatric review technique ("PRT") to rate Plaintiff's degree of limitation in the four broad functional areas of the paragraph B criteria used in evaluating mental disorders under the Listing of Impairments (Tr. 18-19). The ALJ rated Plaintiff as having mild limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting or maintaining pace; and in adapting or managing oneself (Tr. 18-19). Plaintiff disagrees with the ALJ's finding

that Plaintiff had merely a mild difficulty in adapting or managing herself (Doc. 14 at Pg. 16). Specifically, Plaintiff contends that the ALJ did not adequately consider how Plaintiff's anxious or depressed mood, her feelings of hopelessness and helplessness, and her ruminating thoughts would impact her ability to deal with stress in the workplace (Doc. 14 at Pg. 18). However, substantial evidence supports the ALJ's decision.

First, Plaintiff did not meet her burden of proving that she has a mental impairment. While Plaintiff contends that her mental impairments caused more than a slight or trivial impairment on her ability to work, Plaintiff did not initially claim disability based on any mental limitations (Tr. 18, 184). Plaintiff actually indicated that her mental impairments did not limit her ability to work and also reported that her depression was not an independent condition but rather, was a result of pain and did not prevent her from working (Tr. 237). While Plaintiff did seek counseling in June 2017 from Lynda Gurvitz, Ph.D ("Dr. Gurvitz"), this was related to her desire to help manage her difficult relationship with her daughter and to learn new techniques to resolve family conflict (Tr. 19, 590). Plaintiff did not report that her mental impairments caused any issues with her ability to work but rather, Plaintiff told Dr. Gurvitz that she had retired due to physical issues and that she felt a lack of purpose since retirement (Tr. 19, 590, 593). Thus, Plaintiff's own reports and treatment history do not demonstrate that her mental impairments resulted in any more than mild limitations in her ability to perform basic work activities. *See* 20 C.F.R. § 404.1521(a)-(b); *see also Smith v. Comm'r of Soc. Sec.*, 501

F. App'x 875, 879 (11th Cir. 2012) (upholding the ALJ's finding that claimant had no severe mental impairments in part because she told the consulting psychologists that the problems preventing her from working were physical, rather than mental).

Substantial evidence also supports the ALJ's finding that Plaintiff merely had mild limitations in the functional area of adapting or managing herself, which measures her ability to "regulate emotions, control behavior, and maintain well-being in the work setting." 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 12.00E(4). The ALJ noted that Plaintiff admitted that she can perform personal care independently and that Plaintiff drives, cares for her grandchildren, socializes with friends, goes fishing, and even considered performing volunteer work during the period at issue (Tr. 19, 230-31, 611, 620). Plaintiff ultimately decided against doing volunteer work because she found that she was content with her life as is and did not want to add additional responsibilities (Tr. 19, 620). She also noted that she might be dealing with a physical issue such as poor thyroid regulation, which may or may not have been a reason in declining to participate in volunteer work (Tr. 662). Regardless, Plaintiff did not mention any limitations in her ability to adapt or manage herself as reasons for declining to participate in volunteer work.

Additionally, although Plaintiff argues that the ALJ failed to account for Plaintiff's reported moods of depression, anxiety, and sadness, the ALJ's decision indicates otherwise (Tr. 19). The ALJ expressly discussed Dr. Gurvitz's treatment notes, which revealed that Plaintiff had a sad/depressed and anxious mood with congruent effect and that Plaintiff complained of worry, sadness, and anxiety

stemming particularly from the issues with her daughter (Tr. 19). The ALJ considered these findings, but also noted that the same treatment notes revealed that Plaintiff was cooperative, oriented, had intact memory, a logical and goal-directed thought process, and normal attention/concentration (Tr. 19). The ALJ further stated that throughout Plaintiff's treatment notes, Dr. Gurvitz noted signs and symptoms of depression and anxiety, but that the treatment notes failed to include anything indicating significant functional deficits in terms of memory, concentration, attention, social functioning, or the ability to manage one's symptoms (Tr. 19, 590-680). The ALJ also noted that Plaintiff reported that medication worked well for controlling her anxiety (Tr. 19, 539, 543-44, 590-679). The evidence of record indicates that Plaintiff maintained a regular schedule of psychotherapy for handling her stress, which further buttresses the ALJ's determination that Plaintiff was capable of managing her symptoms and had no more than mild limitations in her ability to adapt or manage herself (Tr. 19, 539, 543-44, 590-679). Therefore, substantial evidence supports the ALJ's decision.

Additionally, even if the ALJ did err – which he did not – in finding Plaintiff's adjustment disorder to be non-severe, such error is harmless since the ALJ found other severe impairments at step two and considered all impairments at the later steps of the sequential evaluation. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to

meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). However, since substantial evidence supports the ALJ's finding that Plaintiff's adjustment disorder is non-severe, the undersigned will not address the harmless error analysis.

**B.     Whether the RFC assessment accounts for Plaintiff's migraine headaches.**

Plaintiff alleges that the RFC assessment does not account for the frequency or severity of Plaintiff's migraine headaches (Doc. 14 at Pg. 25). For the reasons that follow, substantial evidence supports the ALJ's RFC restrictions and supports the ALJ's consideration of Plaintiff's migraines.

Prior to Steps Four and Five of the sequential evaluation process, an ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC assessment represents "the most" a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC must take into account all of the medical evidence in the record, and must reflect all of the claimant's physical, mental, and environmental restrictions. 20 C.F.R. § 404.1545(a)(1) and (3). Additionally, the Eleventh Circuit has held that an RFC assessment must describe the combined effects of all of a claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).

The issue is not whether some evidence might support Plaintiff's allegations, but rather, whether substantial evidence supports the ALJ's findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it"). Under a substantial evidence standard of review, Plaintiff cannot merely identify evidence in the record supporting her position, but rather, must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Here, the ALJ found that Plaintiff's migraines were a severe impairment and stated that "there is no disputing the fact that the claimant has migrant headaches" (Tr. 17, 23). However, the ALJ recognized and extensively discussed that despite Plaintiff's migraines, medication proved effective in managing the pain (Tr. 22-23). Plaintiff appears to have first established care with neurologist Arthur J. Pedregal, MD ("Dr. Pedregal") in March 2017 (Tr. 22, 355). Dr. Pedregal noted that Plaintiff reported that, for years, she experienced a consistent pattern of changes in mood, cognitive capability, and fluctuations in diffuse pain that she would experience for a few days before and after her migraine headaches (Tr. 22, 355). She reported that she had taken over-the-counter medicines, which were not helpful (Tr. 355). Plaintiff was then prescribed Topamax to control her migraines, which sharply

decreased the frequency and intensity of the migraine attacks and did not have any side effects (Tr. 373, 437). Before being prescribed Topamax, Plaintiff would experience three to four migraine attacks per week, which could last up to 72-hours, but after taking Topamax, Plaintiff was averaging three episodes per month (Tr. 437).

Plaintiff continued treatment for her migraine headaches in October 2017 with Luis G. Figueroa, MD at the Florida Spine Institute where it was reported that although Plaintiff had to stop taking Topamax because side effects began to impact her, she started taking Relpax, which had been quite effective and well-tolerated (Tr. 23, 437). In December 2017, Plaintiff stated that she was doing very well on her medication and that she was migraine-free (Tr. 23, Tr. 419). In July 2018 at a primary care visit, Plaintiff reported that Depakote, which was purportedly prescribed by her neurologist, was really helping her headaches (Tr. 23, Tr. 551). However, while Plaintiff reported in December 2017 that she was migraine free, the records from this July 2018 visit state that Plaintiff reported four to six migraines per month (Tr. 551).

Notwithstanding all of these findings, Plaintiff remained able to handle her daily activities during the relevant period, which included babysitting her grandchildren, socializing with family and friends, preparing simple meals, performing light housework, shopping in stores, and handling personal finances (Tr. 21). Plaintiff also would go boating, fishing, and attend her grandchild's baseball games (Tr. 21). While it is undisputed that Plaintiff suffers from migraines,

Plaintiff's RFC successfully accommodates such impairment. Notably, the RFC includes that Plaintiff "must avoid concentrated exposure to extreme temperatures, excessive noise, excessive vibration, and pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas" (Tr. 20). As the Commissioner states, these environmental factors all could be potential migraine triggers (Doc. 14 at Pg. 28). *See Coheley v. Soc. Sec. Admin.*, 707 F. App'x 656, 659-60 (11th Cir. 2017) (upholding the ALJ's RFC finding and noting that the RFC accounted for claimant's migraines by including environmental limitations). These RFC limitations, including restricting Plaintiff to sedentary work, all result in Plaintiff performing work that is less stressful and less taxing than work with higher exertional requirements, thus successfully accommodating Plaintiff's migraine headaches. *See Graham v. Comm'r of Soc. Sec.*, 622 F. App'x 841, (11th Cir. 2015) (rejecting claimant's argument that the ALJ erred by determining she had the RFC to perform light work despite also concluding her migraine and tension headaches were severe impairments). For these reasons, substantial evidence supports the ALJ's RFC assessment and consideration of Plaintiff's migraine headaches.

**C.     Whether the ALJ erred in not giving weight to Dr. Thompson's medical opinion.**

Plaintiff next contends that the ALJ erred by rejecting Plaintiff's orthopedic surgeon, Dr. Thompson's opinion regarding Plaintiff's right shoulder. The ALJ determined that Dr. Thompson's opinion warranted no evidentiary weight because it was inconsistent with the evidence of record (Tr. 25). For the reasons that follow,

substantial evidence supports the ALJ's decision to give no weight to Dr. Thompson's RFC questionnaire.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more evidence a medical source presents to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Winschel*, 631 F.3d at 1179. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th

Cir. 1997). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Here, the parties do not appear to contest that Dr. Thompson is a treating physician. Therefore, the sole issue before this Court is whether the ALJ had good cause for giving Dr. Thompson's opinion no evidentiary weight. In November of 2018, Plaintiff began visiting Dr. Thompson and complained of right shoulder pain (Tr. 23). Plaintiff had received physical therapy, been prescribed Oxycodone, given two cortisone injections, and wore a sling, all of which provided relief, but did not resolve her shoulder issues (Tr. 847). Her symptoms improved, but she continued to experience pain when using her right shoulder (Tr. 847). Thus, Dr. Thompson recommended shoulder surgery (Tr. 23-24, 847-48). On November 27, 2018, Plaintiff presented to Dr. Thompson to undergo a subacromial decompression and distal claviculectomy (Tr. 24). During that surgery, it was discovered that Plaintiff

16

had a high-grade rotator cuff tear (Tr. 24). In the weeks that followed, Plaintiff presented with a sling on her right shoulder, but stated that she could still use her right hand (Tr. 24). However, on or around December 26, 2018, Dr. Thompson opined in an RFC questionnaire that Plaintiff can never lift anything with her right arm and that Plaintiff cannot use her right arm at all, including no reaching, lifting, pushing, pulling or climbing (Tr. 868-69).

The ALJ found that Dr. Thompson's stated limitations were directly related to the right shoulder surgery he performed and the temporary effects of that surgery on the upper right extremity, as opposed to Plaintiff's post-recovery limitations (Tr. 25). Therefore, the ALJ rejected Dr. Thompson's opinion and used Plaintiff's pre-surgery functional limitations in forming the RFC finding (Tr. 24-25). In rejecting Dr. Thompson's opinion, the ALJ stated that Dr. Thompson's opinion that Plaintiff can lift nothing at all is not only inconsistent with Plaintiff's testimony to the consultative examiner, but also does not make sense, as there is no known limitation or impairment relating to Plaintiff's left upper extremity (Tr. 25). Nothing in the record indicates that Plaintiff has limitations with her left shoulder, nor that Plaintiff is incapable of lifting with her left extremity. Moreover, Dr. Thompson's opinion was provided shortly after Plaintiff's surgery and Dr. Thompson does not provide any duration as to his opinion (Tr. 867-70). Looking at Dr. Thompson's opinion in this context, it appears that such opinion pertained to Plaintiff's shoulder condition at the time of the opinion – approximately one month after her surgery – as opposed

to Plaintiff's right shoulder condition a few months later once her right shoulder healed.

Moreover, the ALJ sufficiently accounted for the supported limitations in the use of Plaintiff's arm by basing the RFC finding on Plaintiff's functional limitations prior to her surgery (Tr. 24). In forming the RFC, the ALJ limited Plaintiff to sedentary work, which involves lifting no more than 10 pounds (Tr. 20). *See* 20 C.F.R. § 404.1567(a). The ALJ limited Plaintiff to no more than occasional pushing, pulling, or reaching overhead with the right extremity and no more than frequent reaching in all other directions with the right extremity (Tr. 20). The ALJ also stated that Plaintiff may not climb scaffolding, ropes, or ladders (Tr. 20). These limitations are supported by the record. As discussed by the ALJ, some examination findings indicated a diminished range of motion in her right shoulder, but Plaintiff did report some improvement with physical therapy and cortisone injections (Tr. 442, 445, 452, 458, 464, 762, 765). Eventually the relief from the cortisone shots reached its peak and was no longer a sufficient treatment option for Plaintiff, thus necessitating the recommendation for surgery to treat Plaintiff's shoulder (Tr. 24, 772, 808). All of these findings were accounted for by the ALJ and thus, substantial evidence supports the ALJ's decision to reject Dr. Thompson's opinion.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 27th day of July, 2021.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record